UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROBERT E. JACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 22-CV-0412-CVE-MTS |
| | ) | |
| **AXIOM STRATEGIES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is defendant Axiom Strategies, LLC's ("Axiom") motion to dismiss (Dkt. # 11), plaintiff's response (Dkt. # 15), and defendant's reply (Dkt. # 17). On August 18, 2022, plaintiff filed a petition in Tulsa County District Court, Oklahoma, asserting claims for negligence, negligence per se, and gross negligence against Axiom, and seeking both actual and punitive damages. Dkt. # 2-2. On September 22, 2022, Axiom removed the action to this Court because it has original jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between plaintiff and defendant and the amount in controversy exceeds $75,000. Dkt. # 2, at 2-3. On October 3, 2022, Axiom filed the present motion to dismiss plaintiff's petition for lack of standing and, therefore, lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim pursuant to Rule 12(b)(6).

I.

Plaintiff's petition alleges the following: plaintiff Robert E. (Bob) Jack ran for Tulsa County Commissioner District No. 3 in a runoff election to be held on August 23, 2022. DKt. # 2-2, at 1. He hired Axiom, a company that "assists political candidates across the country with various aspects of political campaigning," and "regularly does business" in Oklahoma, to "assist with various

mailers for his campaign." Id. The parties' contract, attached to plaintiff's petition, includes an array of campaign consulting and messaging services for which Jack also retained Axiom, id. at 5-7, and warrants that Axiom would "use best efforts and diligence in performing the services required by th[e] agreement." Id. at 7.

On May 18, 2022, Jack approved an Axiom-created mailer which "included an absentee ballot request form." Id. at 1. During the approval process, Axiom did not inform Jack of any additional information that might be added to the mailer. Id. Subsequent to Jack's approval and without his knowledge, Axiom "altered" the mailers to include either "(i) partially completed absentee ballot request forms, including the recipients' dates of birth and mailing address information or (ii) a means that such an absentee ballot request could be made *via* QR code or website access." Id. at 2 (italics in original). On May 31, 2022, Axiom sent these altered mailers "on behalf of Bob Jack." Id.

"Absentee ballot harvesting" is unlawful in Oklahoma. OKLA. STAT. tit. 26, § 14-101.1. Both at the time of these events and today, "absentee ballot harvesting" includes "[p]artially or fully completing an application for an absentee ballot on behalf of another person without that person's prior consent." OKLA. STAT. tit. 26, § 14-101.1(A)(5) (April 25, 2022), *amended by* OKLA. STAT. tit. 26, § 14-101.1 (August 26, 2022). Oklahoma law requires the county election board to notify the relevant district attorney when it has documents that appear to be evidence of voting crimes, and the district attorney must investigate those referrals. OKLA. STAT. tit. 26 § 16-123; Dkt. # 2-2, at 2. "As a consequence of" Axiom making and sending the altered mailers, the Tulsa County Election Board initiated "a criminal investigation" pursuant to OKLA. STAT. tit. 26 § 16-123 and referred it to the

2

Creek County District Attorney. Dkt. # 2-2, at 2. At the time of plaintiff's petition, no charges had been filed against Jack as a result of this investigation.[1] Dkt. # 2-2, at 2.

"As a consequence of" Axiom's actions, Jack's "political opponents and others acting on his opponent's [sic] behalf have exploited th[e] situation to accuse [] Jack of being a criminal, falsely accusing him of being 'prosecuted' for a crime he did not commit and with which he had no involvement." Id. In addition, local news media have "picked up and carried stories about [] Jack's supposed 'crime . . [sic].'" Id. All of this "jeopardize[d] [Jack's] position in the election and has caused damage to his personal reputation." Id.

Plaintiff alleges Axiom's actions "constitute negligence, negligence per se, and/or gross negligence," and seeks actual and punitive damages. Id. at 3.

## II.

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving such jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,

---

[1] While the Court's analysis at this stage of the litigation is limited to the facts as alleged in plaintiff's petition, the Court notes that defendant's motion (Dkt. # 11), filed in October, 2022, also states that no charges had been filed as of that time. Dkt. # 11, at 2.

3

363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted).  Here, defendant has facially attacked the sufficiency of the complaint's allegations as to the existence of standing, which is an issue of subject matter jurisdiction.  Where a motion to dismiss is based on a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action."  Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  Therefore, both of defendant's grounds for dismissal under Rules 12(b)(1) and 12(b)(6) are governed by the same standard.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 562.  Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."  Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263

4

F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Axiom argues that plaintiff lacks standing to bring the present action and, even if he has standing, his petition should be dismissed for failing to state a claim upon which relief can be granted. Dkt. # 11. Jack argues that he has standing as he alleged a concrete injury that is traceable to Axiom, and that he has also adequately alleged a cause of action for negligence and/or gross negligence.[2] Dkt. # 15. The Court first addresses whether plaintiff has standing under the facts alleged, as it is a threshold jurisdictional issue. Should the Court find standing, then it will address whether plaintiff has stated a claim upon which relief can be granted.

### A.

Axiom argues plaintiff lacks standing because he "cannot show a concrete injury or trace an injury" to defendant. Dkt. # 11, at 3. Article III restricts federal courts to the adjudication of "cases or controversies." U.S. Const. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, plaintiff must establish that: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion

---

[2]   In his response, after "due consideration of the Oklahoma case law governing negligence *per se*," plaintiff recognized that his negligence per se claim "is properly dismissed." Dkt. # 15, at 13. Therefore, the Court will dismiss plaintiff's negligence per se claim without prejudice.

LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992)). The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. Lujan, 504 U.S. at 561. At this pleading stage of the litigation, plaintiff "must 'clearly . . . allege facts demonstrating' each element." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). Defendant argues that plaintiff lacks standing for two reasons. First, defendant asserts that plaintiff has not alleged a concrete injury in fact. Dkt. # 11, at 4; Dkt. # 17, at 2. Second, defendant asserts that, even if plaintiff has asserted a concrete injury in fact, it is not fairly traceable to the defendant's alleged actions. Dkt. # 11, at 5; Dkt. # 17, at 2-3.

First, the Court finds that plaintiff has adequately alleged a concrete injury. Reputational harm is a concrete injury that confers standing. See TransUnion, 141 S.Ct. at 2204 (listing "reputational harms" among "[v]arious intangible harms" with a "close relationship to harms traditionally recognized as provided a basis for lawsuits in American courts" that can "also be concrete"). Defendant contends that plaintiff's allegations concerning reputational harm are insufficient as he "offers one conclusory statement" and the "sole" allegation that "he 'suffered an injury to his reputation'" is merely "conclusory." Dkt. # 11, at 4; Dkt. # 17, at 2 (quoting Dkt. # 15, at 4). Defendant mischaracterizes the extent of plaintiff's allegations. In his petition, plaintiff alleges that his "political opponents" and others accused him "of being a criminal" and "bring 'prosecuted' for a crime he did not commit." Dkt. # 2-2, at 2. He further alleges that the "news media in Tulsa" has run stories about his "supposed 'crime.[sic]'" Id. These are not mere conclusory statements, but factual averments that support his claim of reputational harm. At this stage of the litigation, plaintiff need only plead facts that support his claim, which is exactly what

plaintiff has done. Therefore, plaintiff has adequately alleged that he suffered harm to his reputation, which is a concrete injury that confers standing.

Second, the Court finds that plaintiff's alleged injury is fairly traceable to defendant's alleged actions. To have standing, "a plaintiff must show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Nova Health Systems v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting Lujan, 504 U.S. at 560). Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Id. This requirement is "something less than the concept of 'proximate cause.'" Id. (quoting Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1273 (11th Cir. 2003)). Plaintiff alleges that he suffered an injury when defendant negligently mailed unapproved mailers, which exposed plaintiff to criticism from his "political opponents" and the opening of a criminal investigation ahead of the election. Dkt. # 2-2, at 2. Defendant argues that Article III's causation requirement is not met here because the alleged harm was caused by the independent actions of third parties (his political opponents and local media) rather than defendant. Dkt. # 11, at 5; Dkt. # 17, at 3. However, according to plaintiff's complaint, had the unapproved mailers not been sent, then no criminal investigation would have been initiated, and plaintiff's "political opponents" could not have used it as fodder and local media could not have covered the story, which are the bases for plaintiff's alleged reputation harm. Thus, plaintiff's injuries are fairly traceable to defendants's conduct, and plaintiff has satisfied Article III's causation requirement. As plaintiff has satisfied Article III standing, the Court now addresses whether plaintiff has stated a claim for relief.

**B.**

Since he voluntary abandoned the negligence per se claim, plaintiff's remaining claims are for negligence and gross negligence. "Under Oklahoma law, the three essential elements of a claim of negligence are: '(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach.'" Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir. 1998) (quoting Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997)). Axiom argues that plaintiff fails to allege: 1) any duty owed, 2) any breach of duty, 3) injuries that were proximately caused by defendant, and 4) sufficient damages. Dkt. # 11, at 6-9. Jack argues that he has adequately pleaded facts to support each element for prima facie negligence and gross negligence claims. Dkt. # 15.

First, "[w]hether a duty of care exists in a particular case is a question of law for the court to determine." Swift v. Serv. Chem., Inc., 310 P.3d 1127, 1333 (Okla. Civ. App. 2013) (citing Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020 (Okla. Civ. App. 2004)). "[T]here is inherent in every contract a common-law duty to perform its obligations with care, skill, reasonable experience and faithfulness. A person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach-of-contract or tort theory, or both . . . ." Finnell v. Seismic, 67 P.3d 339, 344 (Okla. 2003); see also Keel v. Titan Const. Corp., 639 P.2d 1228, 1232 (Okla. 1981) ("Accompanying every contract is a common-law duty to perform it with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract."). Here, the parties had a contract and, therefore, Axiom had a common-law duty to plaintiff. If Axiom failed to perform its contractual obligations with care, skill, reasonable experience and faithfulness, including "design[ing] all

8

content" for the mailers or in using "best efforts and diligence in performing the services," that failure would constitute a breach of its common-law duty, giving rise to Jack's tort claim. See Keel, 639 P.2d at 1232. Plaintiff's petition alleges that Axiom designed and plaintiff approved campaign mailers. Dkt. # 2-2, at 1. After plaintiff approved Axiom's design, Axiom altered the mailers and sent those unapproved mailers to registered voters, which exposed Jack to a criminal investigation and criticism from his opponents and local media. Id. at 2. On its face, designing and mailing unapproved materials that violate state election law and expose a candidate to a criminal ballot harvesting investigation suggests that it was done without care, skill, reasonable experience or faithfulness. As pleaded, these facts plausibly allege that Axiom breached its duty to perform every part of its contract with "care, skill, reasonable experience and faithfulness." Finnell, 67 F.3d at 344.

Next, Axiom argues that even if it did breach a duty to plaintiff, Jack fails to plead that any such breach proximately cause his alleged injury. Dkt. # 11, at 8; Dkt. # 17, at 5. Proximate causation is a required element of any negligence claim. Gaines-Tabb, 160 F.3d at 620; Lockhart, 943 P.2d at 1079. "The proximate cause of an event is that 'which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred.'" Johnson v. Mid-S. Sports, Inc., 806 P.2d 1107, 1109 (Okla. 1991) (quoting Gaines v. Providence Apartments, 750 P.2d 125, 126–27 (Okla. 1987)). Here, Jack has adequately pleaded that Axiom's alleged breach proximately caused his injuries. The petition alleges that "[a]s a consequence of the actions of Axiom," a criminal investigation was opened against Jack, his opponents accused him of being a "criminal," and the local news media covered the story about an ongoing criminal investigation into Jack's possible ballot harvesting violations. Dkt. # 2-2, at 2. Jack alleges that the criminal investigation and those statements, based on Axiom's actions, harmed

his reputation. Jack's use of the phrase, "as a consequence of" demonstrates the causal relationship between Axiom's actions and the subsequent statements and coverage which caused his injury. At this stage, the facts as pleaded in the petition alleges that Axiom's actions proximately caused Jack's injury.

Axiom also contends that proximate causation is not satisfied because the statements of Jack's "political opponents" and the media are intervening or superseding acts which break the chain of causation. Whether an act is the proximate cause of plaintiff's injury "is dependent upon the harm (for which compensation is sought) being the result of **both** *the natural and probable* consequences of the primary negligence. This latter determination is critical to assaying the foreseeability of the injury as a result of the initial negligence . . . ." Lockhart, 943 P.2d at 1079 (emphasis in original). "For an intervenor's act to become a '*supervening cause*' and cut off possible liability for the original negligence, it must (1) be independent of the primary negligence, (2) be adequate of itself to bring about the injury complained of and (3) not be a reasonably foreseeable event." Id.; see also State ex rel. Oklahoma Dep't of Pub. Safety v. Gurich, 238 P.3d 1, 4–5 (Okla. 2010) ("[T]o actually sever the chain of causation the event must be (1) independent of the original negligent act, (2) adequate in itself to produce the injury, and (3) reasonably unforeseeable."). "When . . . the intervening act is a reasonably foreseeable consequence of the primary negligence, the original wrongdoer will not be relieved of liability." Lockhart, 943 P.2d at 1079. Whether the statements are superceding causes is ultimately a question of fact. Gurich, 238 P.3d at 5 ("The issue of whether the consequences of the original act could have been reasonably foreseen is one of fact."). At this stage plaintiff's burden is simply to allege facts to support his prima facie case. While Axiom did not make the statements that allegedly "caused damage to [Jack's] personal reputation," plaintiff has

adequately alleged that Axiom's actions were still a proximate cause of that harm. As alleged, it is plausible that Axiom, a company "which assists political candidates across the country" and "regularly does business in . . . Oklahoma," Dkt. # 2-2, at 1, knew or should have known that mailing the unauthorized materials that it designed and produced would trigger a mandatory criminal investigation and would expose its client, Jack, to reputational harm. Further, without that action, his opponents would not have had any basis to make its harmful statements. Therefore, at this pleading stage of the litigation, plaintiff has adequately alleged facts to support that the harmsful statements were the natural and foreseeable consequence of mailing the unapproved materials and, therefore, Axiom's alleged actions proximately caused plaintiff's injury.

Next, Axiom argues that Jack fails to plead sufficient damages. Dkt. # 11, at 9; Dkt. # 17, at 5-6. As best as the Court can discern, Axiom contends that reputational harm is not applicable in negligence claims; however, Axiom fails to cite any law in either its motion or reply that supports its proposition. Its motion relies exclusively on reputational harm in defamation cases, which is not a claim in this action, and its reply asserts the lack of a "meaningful legal basis for recognizing reputational injuries arising out of a contractual business relationship." Dkt # 17, at 6. Defendant's assertions concerning the applicability of reputational damages miss the mark. Reputation harm is an injury "traditionally recognized as providing a basis for lawsuits in American courts." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021). Further, it is not exclusive to defamation. See TransUnion LLC, 141 S. Ct. at 2200 (finding reputational harm for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.); Meese v. Keene, 481 U.S. 465, 473 (1987) (finding reputational harm to be a cognizable injury in a First Amendment challenge to a governmental action); Drakos v. Jones, 118 P.2d 388, 391 (Okla. 1941) (finding reputational harm

to have "necessarily result[ed]" from malicious prosecution of criminal); <u>Lippitt v. Farmers Insurance Exchange</u>, 233 P.3d 799, 804 (Okla. Civ. App. 2010) (finding that if the plaintiff prevails on the merits in his wrongful termination case, "any damage to [plaintiff's] reputation, if supported by competent evidence, can be reasonably calculated into money damage"). Just because "damage to one's reputation is the essence and gravamen of an action for defamation," <u>Lamb v. Rizzo</u>, 391 F.3d 1133, 1138 (10th Cir. 2004) (quoting <u>Gobin v. Globe Pub. Co.</u>, 649 P.2d 1239, 1243 (Kan. 1982)), does not mean it is exclusive to that tort only. Plaintiff alleges that he has been publically labeled a criminal during a political campaign and local news media have covered the stories about the criminal investigation and his "supposed 'crime.'" Dkt. # 2-2, at 2. This alleged reputational harm resulted from defendant's alleged tort. The Court has not found any authority for the proposition that reputational harm is not an adequate injury in negligence actions. Therefore, plaintiff's alleged reputational harm, which is adequately alleged in his petition, is an adequate injury for the torts of negligence or gross negligence.

Finally, Axiom argues plaintiff's petition fails to support a claim for gross negligence. Dkt. # 11, at 12; Dkt. # 17, at 7. Oklahoma law makes a clear distinction between ordinary and gross negligence. In contrast to the ordinary negligence discussed above, gross negligence is defined as the "want of slight care and diligence." OKLA. STAT. tit. 25, § 6. Slight care and diligence is that which "persons of ordinary prudence usually exercise about their own affairs of slight importance." OKLA. STAT. tit. 25, § 4. To constitute gross negligence, a defendant's action must be "so flagrant, so deliberate, or so reckless that it is removed from the realm of mere negligence." <u>Fox v. Oklahoma Memorial Hosp.</u>, 774 P.2d 459, 461 (Okla. 1989). "The intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty or

property of another, may result in such a gross want of care for the rights of others . . . ." Id. Thus, the difference between ordinary and gross negligence is only a matter of degree. See Martin v. A.C.G., Inc., 965 P.2d 995, 997 (Okla. Civ. App. 1998) ("[A] claim of gross negligence is the same as any negligence claim, differing only as to degree.").

Ultimately, the degree of the alleged negligence is a question of fact and cannot be resolved on this motion to dismiss, as the Court finds that plaintiff's petition contains enough factual allegations for a finder of fact to conclude that under the circumstances, defendant's actions were so flagrant, deliberate, or reckless that they were "removed from the realm of mere negligence." The petition alleges that Axiom is in the business of assisting political campaigns in Oklahoma. Dkt. # 2-2, at 1. It is more than reasonable to infer that a firm performing such work knew or should have known of the applicable campaign and election laws. The petition further alleges that Axiom sent mailers on Jack's behalf that were different than those approved by Jack, and that the unapproved mailers prompted the criminal investigation and exposed Jack to reputational attacks. Id. at 2. As alleged, the facts could support an inference that defendant acted with gross negligence or with reckless disregard for Jack's interests when it altered and sent mailers which warranted an investigation under Oklahoma's ballot harvesting statute. Therefore, the Court finds that plaintiff adequately alleged facts that could support a claim for not only ordinary negligence, but also gross negligence.

As Jack has adequately alleged a claim for gross negligence, his request for punitive damages also remains. Oklahoma statute allows punitive damages to be awarded in actions not arising out of a contract. OKLA. STAT. tit. 23, § 9.1(A) ("In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may . . . award punitive damages for the sake

13

of example and by way of punishing the defendant . . . ."). To award such damages, the jury must find, by clear and convincing evidence, that the defendant acted either with "reckless disregard for the rights of others" or "intentionally and with malice." Id. § 9.1(B)-(C).[3] As the "plea for punitive damages rests on the underlying claim, . . . if there is no recovery on the underlying claim, there can be no recovery of punitive damages." Rodebush ex rel. Rodebush v. Okla. Nursing Homes, Ltd., 867 P.2d 1241, 1247 (Okla. 1993). The Oklahoma pleading code classifies punitive damages as a type of special damages, and "[w]hen items of special damage are claimed, their nature shall be specifically stated." OKLA. STAT. tit. 12, § 2009(G).

     As discussed, plaintiff's claims arise from defendant's common-law duty under tort rather than contract law. Further, because plaintiff specifically states in his complaint that he is seeking punitive damages based on Axiom's alleged grossly negligent conduct, the Court finds that it meets the requirements for seeking punitive damages. See Ferrell v. BGF Glob., LLC, 2018 WL 746399, at *3 (W.D. Okla. Feb. 6, 2018) (motion for summary judgment denied because, although plaintiff did not present evidence of punitive damages, the jury could find that defendant acted with the requisite culpability to warrant punitive damages); Beavers v. Victorian, 38 F. Supp. 3d 1260, 1273-74 (W.D. Okla. 2014) (summary judgment inappropriate where plaintiff requests punitive damages based on reckless conduct). Oklahoma law allows for punitive damages when a defendant acts in reckless disregard for the rights of others, and plaintiff alleges in his amended complaint that Axiom's actions were "taken in reckless disregard for the interests of Bob Jack." Dkt. # 2-2, at 3; see OKLA. STAT. Tit. 23, § 9.1(B)(1) (2002). A jury could find, based on plaintiff's allegations, that

---

[3]    Cf. Glasscock v. Armstrong Cork Co., 946 F.2d 1085, 1093 (5th Cir. 1991) (applying Texas law) ("A finding of gross negligence will justify punitive damages, as will a finding of reckless, willful, or intentional indifference to the rights of others.").

14

defendants acted in reckless disregard for the rights of others. Should Axiom be liable for acting recklessly or with gross negligence, it may be liable for punitive damages.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 11) is **granted in part and denied in part**. It is **granted** as to plaintiff's claim for negligence per se, which is **dismissed without prejudice,** but **denied** as to plaintiff's remaining claims for negligence, gross negligence, and punitive damages.

**IT IS FURTHER ORDERED** that **the parties shall file a Joint Status Report no later than July 20, 2023.**

**DATED** this 10th day of July, 2023.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE